**Michele HADDAD, Plaintiff,**

**v.**

**Elizabeth DUDEK, in her official capacity as Interim Secretary, Florida Agency for Health Care Administra-**

tion,[1] and Dr. Anna Viamonte Ross, in her official capacity as Secretary, Florida Department of Health, Defendants.

Case No. 3:10–cv–414–J–34TEM.

United States District Court,
M.D. Florida,
Jacksonville Division.

March 16, 2011.

---

1. Plaintiff originally named Thomas Arnold, in his official capacity as Secretary of the Florida Agency for Health Care Administration (FAHCA), as a Defendant in this case. Thomas Arnold is no longer serving in that position, and Elizabeth Dudek ("Dudek") is currently serving as Interim Secretary of the FAHCA. (*See* Doc. 60; Joint Motion at 1 (referring to Elizabeth Dudek as the interim Secretary of the Florida Agency for Health Care Administration)). Pursuant to Rule 25(d), Federal Rules of Civil Procedure (Rules(s)), Dudek is automatically substituted as the named Defendant as successor in office to Thomas W. Arnold.

Jay M. Howanitz, Spohrer & Dodd, PL, Jacksonville, FL, Stephen F. Gold, Law

Office of Stephen F. Gold, Philadelphia, PA, for Plaintiff.

Andrew T. Sheeran, Florida Agency for Health Care Administration, Enoch Jonathan Whitney, Office of the Attorney General, Tallahassee, FL, for Defendants.

### ORDER

MARCIA MORALES HOWARD, District Judge.

This case is before the Court on Defendants' Motion to Dismiss Complaint (Doc. 32; Motion to Dismiss), filed on June 8, 2010. In this case, pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12132 and 12133 ("ADA"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Rehab Act"), Plaintiff Michele Haddad seeks declaratory and injunctive relief, ordering the State of Florida, through its agencies, to provide her with home and community-based Medicaid services as part of the Traumatic Brain Injury/Spinal Cord Injury waiver program ("TBI/SCI Waiver Program" or "waiver program"). Plaintiff, a quadriplegic, alleges in her two-count Complaint that Defendants' failure to provide her with home and community-based Medicaid services pursuant to its TBI/SI Waiver Program would force her into an institutionalized nursing care facility. Plaintiff alleges that Defendants' actions violate the ADA and the Rehab Act and their implementing regulations, which require that state services and programs, including Medicaid, be administered " 'in the most integrated setting appropriate' to the needs of the individual with disabilities." (Doc. 1; Complaint ¶ 49). Defendants' have filed a response in Opposition to the Motion to Dismiss, (Doc. 35; Response), and the matter is ripe for review.

### I. Standard of Review [2]

A motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rules(s)), is a motion attacking

---

**2.** Defendants assert that their Motion to Dismiss is brought pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Motion at 1. A motion to dismiss pursuant to Rule 12(b)(1) is a motion challenging the subject matter jurisdiction of the court. Jurisdiction may be attacked facially or factually. *Morrison v. Amway Corp.,* 323 F.3d 920, 924 n. 5 (11th Cir. 2003). In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). On the other hand, factual attacks challenge the " 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.' " *Id.* (citation omitted).

Defendants apparently base their Rule 12(b)(1) motion on their assertion that Plaintiff "lacks standing." Motion at 2, 3; *see AT*

*& T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 494 F.3d 1356, 1359 (11th Cir.2007) ("[s]tanding ... 'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims' ") (citation omitted)). Defendants contend that Plaintiff "lacks standing" because she "fails to allege discriminatory treatment," an essential element of Plaintiff's claim of a violation of the ADA. Motion at 2–3. This argument, however, does not go to Plaintiff's standing, but is addressed directly to the merits of Plaintiff's claims. As such, this challenge is more properly brought pursuant to Rule 12(b)(6). Indeed, Defendants have asserted the same challenge under Rule 12(b)(6). *Id.* at 5–6. Additionally, Defendants argue that Plaintiff "lacks standing" because her claims are collaterally estopped by a class settlement in a prior case, *Dubois v. Levine,* Case No. 4:03–CV–107–SPM (N.D.Fla.) Motion at 3–6. Such a challenge is not brought pursuant to Rule 12(b)(1). Instead, a collateral estoppel challenge brought by a motion to dismiss is made pursuant to

the legal sufficiency of a complaint. In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir.2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. *Jackson v. Bell-South Telecomm.*, 372 F.3d 1250, 1262–63 (11th Cir.2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should " 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *See Iqbal*, 129 S.Ct. at 1949, 1951. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).[3]

## II. *Background*

### A. *Underlying Facts*[4]

According to her Complaint filed May 13, 2010, Plaintiff is a 49 year old woman

Rule 12(b)(6). *See e.g. Concordia v. Bendekovic*, 693 F.2d 1073, 1075–76 (11th Cir.1982); *Stephens v. State Farm Fire and Cas. Co.*, No. 1:03–CV–3094–JTC, 2004 WL 5546250, at *1–3 (N.D.Ga.2004), aff'd 149 Fed.Appx. 908 (11th Cir.2005); *see also Ishler v. Internal Revenue*, 237 Fed.Appx. 394, 397 (11th Cir. 2007) ("preclusion doctrines do not go to 'jurisdiction,' but rather 'provide affirmative defenses once a court exercises jurisdiction over a civil action' " (quoting *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 n. 4 (10th Cir.2004)). Accordingly, Defendants' Motion to Dismiss will be considered in accordance with the legal standards applicable to consideration of mo-

tions brought pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

3. Both parties have included exhibits in their briefing directed to the Motion to Dismiss. *See* Doc. 32–1–32–4 (Exhibits to Motion to Dismiss); Doc. 35; Response at 1 (incorporating Doc. 29; Reply re: Preliminary Injunction (which has 10 exhibits (Docs. 29–1–29–10))). When a party moves to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and matters outside of the pleadings are presented to and not excluded by the court, the motion is to be treated as if it were a motion for summary judgment under Rule 56. *SFM Holdings, Ltd. v. Banc of Amer. Sec., LLC*, 600 F.3d 1334,

who, on September 7, 2007, when she was 47 years old, was in a motorcycle accident caused by an intoxicated driver. Complaint ¶¶ 10, 11. She remained hospitalized in a rehabilitation hospital until January, 2008. *Id.* ¶ 12. As a result of the accident, Plaintiff became a quadriplegic, paralyzed from her chest down, and having minimal manual dexterity. Plaintiff uses a motorized wheelchair for ambulation. *Id.* ¶¶ 14–16.

In November 2007, while she was still hospitalized, Plaintiff "applied to Defendants," specifically the State of Florida, Florida Agency for Health Care Administration and the Florida Department of Health, to receive home health care through the TBI/SCI Waiver Program. She has remained on the "wait list" for services through the filing of her Complaint in May, 2010. *Id.* ¶ 13.

Plaintiff was married for 24 years and has two adult sons. In November, 2009, Plaintiff's husband divorced her. However, he continued to reside with her until March 2010, when one of her adult sons was able to move into her home. *Id.* ¶¶ 18–19.

Between January 2008 when she was discharged from the hospital, and March 2010 when her husband left the house, Plaintiff's husband was her primary caregiver. *Id.* ¶¶ 20. This caregiving included

---

1337 (11th Cir.2010); *Jones v. Automobile Ins. Co. of Hartford,* 917 F.2d 1528, 1531–32 (11th Cir.1990); *Concordia,* 693 F.2d at 1075. However, if a court converts a motion to dismiss into a motion for summary judgment, it must give the parties ten days notice in order to allow them to present all material pertinent to a motion for summary judgment. *Jones,* 917 F.2d at 1532; Fed.R.Civ.P. 12(d), 56(c).

The Eleventh Circuit has instructed that a district court may consider extrinsic evidence in ruling on a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd.,* 600 F.3d at 1337; *see also Brown v. Brock,* 169 Fed.Appx. 579, 582 (11th Cir. 2006) ("[f]irst, judicially noticed facts will not give rise to conversion ... Second, a document outside the pleadings may be considered if it is essential to the plaintiff's claim and not in dispute.... Third, conversion even without notice, will be deemed harmless if the record shows the parties understood conversion would take place and submitted all the documents they would have even with sufficient notice" .... (citations omitted)); *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267–68 (11th Cir.2002); *Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 913 (11th Cir.1993). The Court, in its discretion, declines to consider any documents beyond those listed in the above exceptions, and thus, Defendants' Motion to Dismiss will not be converted to a motion for summary judgment. *Harper v. Lawrence County, Ala.,* 592 F.3d 1227, 1232 (11th Cir.2010); *Jones,* 917 F.2d at 1531–32.

4. In considering the Motion to Dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003); *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994). While the Court did consider factual evidence submitted by the parties beyond the four corners of the Complaint, as it must, in rendering its decision to issue a Preliminary Injunction, *see* Doc. 49; Opinion at 6, 31, the Court recognized on several occasions the limitation of the record at that stage of the proceedings, and the possibility that additional factual evidence would be available on summary judgment or at trial. *See* Opinion at 6, 31, 33–35. As this matter is currently before the Court on Defendants' Motion to Dismiss brought pursuant to Rule 12(b)(6), the Court's review is limited to the "four corners of the complaint" and those excepted documents appropriate for consideration on a motion to dismiss. *See Long v. Slaton,* 508 F.3d 576, 578 n. 3 (11th Cir.2007); *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n. 7 (11th Cir.2006).

lifting her out of bed, transferring her to a wheelchair, bathing her, helping her with personal hygiene needs, dressing her, shopping for food, preparing meals, assisting Plaintiff with eating, and repeating these functions at the end of the day to assist her in getting into bed. As caregiver, Plaintiff's husband also assisted her with her use of a catheter, and bowel program. Since March 2010 when her husband left the house, Plaintiff's son has performed these functions for Plaintiff. However, Plaintiff's son, who resides in Miami, desires to return to Miami as soon as Plaintiff obtains appropriate assistance with her activities of daily living from another source. *Id.* ¶ 21–25.

Plaintiff does not want to go into a nursing home. Instead she wishes to continue residing in the community, where she maintains an active life attending church, going to movies, visiting friends, exercising at the rehabilitation hospital gymnasium, and shopping. *Id.* ¶¶ 26–28. She owns a home that is accessible with a ramp, a roll-in shower, and a hoyer lift. However, her sole source of income is her monthly Social Security Disability Insurance. Although she is eligible for, and receives, both Medicare and Medicaid, *see id.* ¶ 29, Plaintiff alleges that "[w]ithout community-based Spinal Cord Waiver services, [she] is at risk of being institutionalized, even though she desperately does not want to reside in a nursing facility." *Id.* ¶ 30.

In March, 2010, the TBI/SCI Waiver Program was contacted by telephone and informed of Plaintiff's changed home-care circumstances. As of the time of filing the Complaint, Plaintiff had not received any TBI/SCI Waiver Program services, and "Defendants' employee did not know when, or if, Ms. Haddad would receive Waiver services." *Id.* ¶¶ 31, 32. Plaintiff remained on the "wait list" and was told "to be 'eligible' for these services, she will have to enter a nursing home for 60 days." *Id.* ¶ 41.

Plaintiff alleges that at-home community based services would cost Defendants less than her institutionalization in a nursing home to obtain those same services. *Id.* ¶¶ 34, 35. She alleges that the same Medicaid-funded personal-care services available in a nursing facility could be provided in the community, and indeed, are provided by Defendants "without conditioning receipt of such services on placement in a nursing facility" to "a very limited number of people who are similar to Ms. Haddad." *Id.* ¶¶ 37, 38.

> Many persons who have spinal cord injuries, paralysis, and quadriplegia and who have the same or similar daily living activity impairments and needs as Ms. Haddad reside in the community and their own apartments, with appropriate community-based, Medicaid-funded long-term care services.

*Id.* ¶ 36. Plaintiff further alleges:

> Since July 1, 2007, Defendants have provided community-based Medicaid services to 375 people with spinal cord injuries. Defendants will continue to limit those services to 375 people through June 30, 2012.

*Id.* ¶ 43. Additionally, she asserts that the number of persons with spinal cord injuries on the "wait list" for Medicaid-funded community-based services increased from 434 to 554 in 2008, and "Defendants have recently stated that there are 'no funded slots open' in the spinal cord waiver program [TBI/SCI Waiver Program]." *Id.* ¶¶ 44, 46–48, 67. Noting that she has been on the waiting list for the Medicaid-funded

community-based TBI/SCI Waiver Program for two and a half years, since November 2007, Plaintiff alleges:

> Ms Haddad has never been informed about her rank or numerical position on the waiting list, whether her rank or numerical position has even changed, when approximately she will receive Waiver services, what if anything she might do to increase her position, or any other information regarding how slowly or quickly the waiting list might be moving.

*Id.* ¶ 66.

### B. *Plaintiff's Claims for Relief*

In her two-count Complaint, Plaintiff contends that Defendants have violated Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 41.51(d) (Count I), *id.* ¶¶ 70–75; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and its implementing regulation, 28 C.F.R. § 41.51(d) (Count II). *Id.* ¶¶ 76–78. Plaintiff alleges that she is a "qualified person" with disabilities, and that with "reasonable modifications," Defendants could increase the number of spinal cord injury waiver slots in the TBI/SCI Waiver Program or expand the provision of personal care option services to individuals in their homes instead of only in an assisted living facility, "allocating the same funds Defendants would pay for [Plaintiff] in a nursing home to provide services for Ms. Haddad in the community." *Id.* ¶¶ 71,

72, 76. Plaintiff alleges that Defendants' denial of Medicaid funding for the community-based services she requires to avoid segregation in an institution and remain in the integrated home setting appropriate to her needs, and Defendants' requirement conditioning receipt of community-based services on her entering a nursing home for 60 days against her will, constitute unlawful discrimination in violation of the ADA and the Rehab Act. *Id.* ¶¶ 49, 73–75, 77–78.

Plaintiff seeks declaratory and injunctive relief requiring Defendants to provide "Medicaid services which will allow her to continue to reside in the community and not require her institutionalization." *Id.* ¶ 50 and at 13–14. She also seeks costs and attorney's fees pursuant to the ADA and the Rehab Act.

### C. *Procedural History*

Concurrent with the filing of her Complaint, Plaintiff filed a Motion for Preliminary Injunction and Expedited Hearing. (Doc. 2; Motion for Preliminary Injunction). The Court directed Plaintiff to serve the Motion for Preliminary Injunction on Defendants (Doc. 4; 5/13/10 Order).[5] Plaintiff accomplished service of process on Defendants, (Docs. 11, 12; Return of Service, filed May 25, 2010), and the Court set an expedited briefing schedule due to the urgency of the matter. (Doc. 13; 5/25/10 Order).[6] Pursuant to the 5/25/10 Order, the parties submitted briefs

---

**5.** The United States filed a motion seeking leave to submit a brief in this action, (Doc. 6; United States' Motion for Leave to Appear Specially), and the Court granted that request. (Doc. 9; 5/21/10 Order). The United States filed its brief on May 24, 2010, in which it urged the Court to grant a preliminary injunction in favor of Plaintiff, and provided exhibits, including copies of briefs filed

in other similar cases. (Doc. 10; United States' Statement of Interest).

**6.** A detailed recitation of the briefing with regards to the Motion for Preliminary Injunction can be found in the Court's prior Opinion. (Doc. 49; Opinion at 2–4).

and supporting evidence, in the form of declarations, affidavits and exhibits (*see* Docs: 24, 25, 26, 27, 29). On June 15, 2010, the Court conducted a hearing on the Motion for Preliminary Injunction. (Docs. 39; 47), and subsequently received additional briefing from the parties. (Docs. 41, 43).

### 1. *Order Granting Preliminary Injunctive Relief*

On June 23, 2010, the Court entered an Order Granting Preliminary Injunctive Relief. (Doc. 46; 6/23/10 Order). The Court's Order resolved Plaintiff's request that the Court preliminarily "enjoin Defendants from denying her in-home health care services in order to prevent her from being forced into unnecessary institutionalization in a nursing home." 6/23/10 Order at 1.

> In support of her request, Plaintiff, a quadriplegic, contends that she has continuously lived in the community and could continue to do so if Defendants would provide her with the services she is eligible to receive through the state's Traumatic Brain Injury/Spinal Cord Injury (TBI/SCI) Medicaid waiver program. [Footnote omitted.] ... To date, she has been denied those services due to a limitation on the number of persons who can participate in the program.... Thus, although eligible for the services, Plaintiff has remained on a waiting list for nearly two and a half years.... Having lost her caregiver, Plaintiff now faces institutionalization if not provided in-home health care services such as those provided under the TBI/SCI waiver which she is otherwise medically and financially eligible to receive.

*Id.* at 1–2 (citations omitted). In the Order, the Court noted that it had been

advised that Plaintiff was hospitalized at the time of the June 15, 2010 hearing due to medical complications unrelated to the alleged denial of services. *Id.* at 3–4. However, Plaintiff's counsel also advised that upon discharge, Plaintiff "would be unable to go home without the provision of the services she seeks to compel Defendants to provide." *Id.* at 3. Although on the day of the hearing, counsel informed the Court that Plaintiff was due to be discharged from the hospital "in two to three weeks," *id.* at 3–4, on June 21, 2010, Plaintiff's counsel filed a Notice stating that Plaintiff was to be discharged from the hospital on June 24, 2010. (Doc. 40). Thus, due to the "exigency of Plaintiff's current circumstances," the Court issued its 6/23/10 Order "in advance of Plaintiff's impending release from the hospital," indicating that a more "thorough written analysis" would follow. *Id.* at 5. In the 6/23/10 Order, having considered the evidence and legal argument presented, the Court granted the Motion for Preliminary Injunction, determining that

> Plaintiff has made a clear showing that she has a significant and substantial likelihood of succeeding on the merits of her claim that Defendants' refusal to provide her with in-home based health care services for which she is financially and medically eligible, and which Defendants provide to others through the TBI/SCI Medicaid waiver program violates the ADA and the Rehab Act; that she will suffer irreparable injury unless the injunction is issued in that she is at imminent risk of being institutionalized in order to obtain the necessary services which Defendants refuse to provide her outside the institutional setting; that the threatened injury to Plaintiff outweighs the possible injury that the limited injunctive relief ordered here may cause

Defendants; and that this injunction will not disserve the public interest.

*Id.* at 8. The Court waived the requirement that Plaintiff post a bond, and ordered Defendants to immediately re-assess Plaintiff's eligibility and placement on the waiting list for services in the TBI/SCI Waiver Program, and enjoined Defendants from refusing to provide Plaintiff services consistent with those that would be authorized by the TBI/SCI Waiver Program. *Id.* at 8–9.

## 2. *Court's Preliminary Injunction Opinion*

The Court issued its more lengthy analysis, setting forth the Court's reasoning, on July 9, 2010, 784 F.Supp.2d 1284, 2010 WL 6650335 (M.D.Fla.2010). (Doc. 49; 7/9/10 Opinion).[7] The factual findings set forth in the 7/9/10 Opinion were based upon the evidence submitted by the parties, including declarations, affidavits, and documents, as well as representations made by counsel for the parties at the June 15, 2010 hearing. *Id.* at 6–13. The Court first determined that Plaintiff has standing to pursue the claims raised in this action, and then addressed Defendants' arguments challenging Plaintiff's ability to succeed on the merits of her claims. *Id.* at 14–16. The Court specifically addressed, analyzed, and rejected the following arguments made by Defendants: (1) Plaintiff cannot state a claim of discrimination under the ADA, *id.* at 18–21; (2) Plaintiff's claims are barred by collateral estoppel, based upon the settlement in the *Dubois* litigation, *id.* at 21–24; (3) Plaintiff fails to state a claim for relief because the ADA

regulations do not create a private right of action, *id.* at 24–26; (4) the ADA regulations provide that a public entity need not provide personal care services, *id.* at 26–27; and (5) Plaintiff's claims fail to state a claim because they would abrogate or amend the Medicaid Act by making personal care services mandatory or by requiring Defendants to un-cap the TBI/SCI Waiver Program. *Id.* at 27–29. The Court also specifically addressed whether Plaintiff's claims met the requirements necessary to state a claim of discrimination under the ADA pursuant to the Supreme Court's decision in *Olmstead v. Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). 7/9/10 Opinion at 29–39. Focusing on the disputed factors, the Court determined, based upon the limited record before it, that Plaintiff had a substantial likelihood of establishing that her requested accommodation—the receipt of community-based services—was a reasonable accommodation in light of the Defendants' resources and their obligations under the law, and that Defendants failed to establish that providing Plaintiff's requested accommodation would result in a "fundamental alteration" of Defendants' programs. *Id.* at 30–36. Completing its analysis, the Court further found that the prospect of "uncertain, indefinite institutionalization" which would result if relief were not ordered would cause irreparable injury to Plaintiff. *Id.* at 36–37. Additionally, the Court found that Plaintiff had established that "she is, indeed, on the threshold of unnecessary institutionalization" and that the "balance of harms" lies in Plaintiff's favor. *Id.* at 37. And finally, the Court found that the "public interest favors pre-

---

**7.** Neither the 6/23/10 Order nor the 7/9/10 Opinion addressed Plaintiff's contention that she should be provided personal care services otherwise provided to persons in assisted liv-

ing facilities. The Court's Preliminary Injunction addressed the TBI/SCI Waiver Program. 6/23/10 Order at 2 n. 1; 7/7/10 Opinion at 9 n. 8.

venting the discrimination that faces Plaintiff so that she may avoid unnecessary institutionalization." *Id.* at 38 (citing *Olmstead,* 527 U.S. at 599–601, 119 S.Ct. 2176).

In ruling on the Motion for Preliminary Injunction, the Court repeatedly acknowledged that it was making its determination based upon the limited record before it at the time, and the "unique circumstances currently facing Plaintiff Michele Haddad." *Id.* at 39 n. 19. The Court anticipated further development of the evidentiary record, noting that its determination that preliminary injunctive relief is appropriate

> should not be interpreted as suggesting that the Court will find such relief warranted under circumstances different from those here, or that Defendants, on a more complete record, cannot establish that such relief would constitute a fundamental alteration of the programs or that they have a comprehensive, effectively working plan for providing services to qualified individuals with disability obviating the need for such relief.

*Id.; see also id.* at 6 n. 6 (based on the expedited schedule, the Court noted that "the factual record contained herein may not be completely developed" and that the findings of fact and conclusions of law on preliminary injunction "do not necessarily reflect what may be established on a record more fully developed following trial on these issues"); *id.* at 31 ("Defendants may be able to support these contentions on a more developed record").

### 3. *Proceedings Following Preliminary Injunction*

■ In accordance with the Court's 6/23/10 Order, Defendants, on August 5, 2010, submitted the Affidavit of Kristen Russell Regarding Plaintiff's Status In The Waiver. (Doc. 56–1; Russell Aff.).[8] Ms. Russell stated that Plaintiff was "assessed" by the State on June 24, 2010. *Id.* ¶ 4. Although Plaintiff's "prioritization score" placed her 88th on the TBI/SCI Waiver Program waiting list, she was placed in the TBI/SCI Waiver Program on July 29, 2010, in order to comply with the 6/23/10 Order. *Id.* ¶ 6. Under the TBI/SCI Waiver Program,

> Ms. Haddad receives four hours per day of in-home personal care services and six hours per day of companion care services. She is also receiving nursing services to complete her bowel care. Furthermore, [Defendants have] arranged with Ms. Haddad's physician to prescribe additional home health care visits to be paid by Medicare for the administration of medication for breathing treatments.

*Id.* ¶ 7. The parties have submitted no further reports regarding Plaintiff's status.[9]

This case is currently scheduled for a Bench Trial during the trial term commencing August 1, 2011. (Doc. 55). The parties have proceeded with discovery in this matter. (*See* Docs. 55, 60, 61, 62).

8. Ms. Russell is the Medicaid Waiver Administrator for the State of Florida's TBI/SCI Waiver Program. Russell Aff. ¶ 1.

9. Despite the fact that Plaintiff is currently assigned to the TBI/SCI Waiver Program, her claims are not moot. Defendants assert that plaintiff's "prioritization score" does not entitle her to placement in the program, and that the "only way" Defendants could comply with the Court's 6/23/10 Order granting a preliminary injunction was to "immediately place Ms. Haddad in the TBI/SCI Waiver Program, despite her technical ineligibility." Russell Aff. ¶¶ 4, 5. Thus, Plaintiff's injury is "capable of repetition." *Olmstead,* 527 U.S. at 594 n. 6, 119 S.Ct. 2176.

## III. *Discussion*

### A. *Defendants' Motion to Dismiss*

Defendants have moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim under the ADA and the Rehab Act for the following reasons: (1) Plaintiff cannot state a claim of discrimination under the ADA because Defendants' alleged conduct is not discriminatory, Motion to Dismiss at 2–3, 5–6; (2) Plaintiff's claims are barred by collateral estoppel, based upon the settlement in the *Dubois* litigation, *id.* at 3–5; (3) the ADA regulations do not create a private right of action, *id.* at 6–8; (4) the ADA does not require a public entity to provide services of a personal nature, *id.* at 9–13; (5) the relief requested would result in the ADA amending or abrogating the Medicaid Act, *id.* at 13–20; and (6) the relief requested would result in a "fundamental alteration" to the Florida Medicaid Program, in violation of the ADA, *id.* at 20–24.

### B. *Applicable Law*

 Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[10] "To state a claim under Title II of the ADA, a plaintiff must allege: (1) that [s]he is a 'qualified individual with a disability;' (2) that [s]he was 'excluded from participation in or ... denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such disability.'" *Shotz v. Cates,* 256 F.3d 1077, 1079 (11th Cir.2001) (quoting 42 U.S.C. § 12132). In the *Olmstead* decision, the Supreme Court considered the application of this public services antidiscrimination provision in circumstances comparable to those presented by this case:

> we confront the question whether the proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions.

*Id.* at 587, 119 S.Ct. 2176. The Court answered this question with a "qualified yes." *See id.* In doing so, the Court held that the unjustified institutional isolation of persons with disabilities is a form of discrimination by reason of disability. *See id.* at 597, 600–01, 119 S.Ct. 2176. The Court explained:

> Recognition that unjustified institutional isolation of persons with disabilities is a form of discrimination reflects two evident judgments. First, institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life.... Second, confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, edu-

---

**10.** Plaintiff's Rehab Act claim is essentially the same as her ADA claim, and discrimination claims of this kind are analyzed similarly under the two acts. *See Allmond v. Akal Sec., Inc.,* 558 F.3d 1312, 1316 n. 3 (11th Cir.2009) ("Because the same standards govern dis-crimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably."). Accordingly, the Court will refer primarily to the ADA for the sake of brevity.

cational advancement, and cultural enrichment. Dissimilar treatment correspondingly exists in this key respect: In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice.

*Id.* at 600–01, 119 S.Ct. 2176 (internal citations omitted). To avoid the discrimination inherent in the unjustified isolation of disabled persons, public entities are required to make reasonable modifications to policies, practices, and procedures for services they elect to provide. Nevertheless, the *Olmstead* Court recognized that a state's responsibility, once it determines to provide community-based treatment, is not without limits. *See id.* at 603, 119 S.Ct. 2176.[11] Rather, the regulations implementing the ADA require only "reasonable modifications" and permit a state to refuse alterations to programs that will result in a fundamental alteration of the program or service. *See id.*

■ In considering whether a proposed modification is a reasonable modification, which would be required, or a fundamental alteration, which would not, the *Olmstead* Court determined that a simple comparison showing that a community placement costs less than an institutional placement is not sufficient to establish reasonableness because it overlooks other costs that the state may not be able to avoid. *See id.* at 604, 119 S.Ct. 2176. The Court explained,

> Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities.

*Id.* Indeed, the Court recognized that the fundamental alteration defense must be understood to allow some leeway to maintain a range of facilities and services. *See id.*

> If, for example, the State were to demonstrate that it had a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that moved at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated, the reasonable-modifications standard would be met.... In such circumstances, a court would have no warrant effectively to order displacement of persons at the top of the community-based treatment waiting list by individuals lower down who commenced civil actions.

*Id.* at 605–06, 119 S.Ct. 2176. Thus, having considered the ADA as well as the applicable regulations, the Court concluded that the ADA requires states to provide community based treatment for persons

---

11. " '[W]hile "[t]he section of Justice Ginsburg's opinion discussing the state's fundamental alteration defense commanded only four votes ... [b]ecause it relied on narrower grounds than did Justice Stevens' concurrence or Justice Kennedy's concurrence, both of which reached the same ultimate result, Justice Ginsburg's opinion controls." ' " *Arc of Washington State Inc. v. Braddock,* 427 F.3d 615, 617 (9th Cir.2005) (quoting *Sanchez v. Johnson,* 416 F.3d 1051, 1064 n. 7 (9th Cir.2005), quoting *Townsend v. Quasim,* 328 F.3d 511, 519 n. 3 (9th Cir.2003)).

with disabilities when: (1) the state's treatment professionals have determined that community-based services are appropriate for an individual; (2) the individual does not oppose such services; and (3) the services can be reasonably accommodated, taking into account (a) the resources available to the state, and (b) the needs of others with disabilities. *See id.* at 602–04, 607, 119 S.Ct. 2176; *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379–80 (3d Cir.2005); *Frederick L. v. Dep't of Pub. Welfare of the Commonwealth of Pa.,* 364 F.3d 487, 493 (3d Cir. 2004); *Fisher v. Okla. Health Care Auth.,* 335 F.3d 1175, 1181 (10th Cir.2003). When these requirements are met, states must provide services to individuals in community settings rather than in institutions. *See Fisher,* 335 F.3d at 1181.

### C. *Defendants' Arguments*

### 1. *Plaintiff Fails to State A Claim For Relief Under the ADA Because She Fails To Allege Discriminatory Conduct*

 Defendants argue that Plaintiff has not alleged that she was excluded from services " 'by reason of ... disability' " and indeed alleges that individuals with

her disability receive community-based services. Motion to Dismiss at 2.[12] Defendants' argument was summarily rejected by the Supreme Court in *Olmstead.* There, the state argued that plaintiffs encountered no discrimination "by reason of" their disabilities because they were not denied community placement on account of their disabilities, and because no similarly situated individuals received preferential treatment. 527 U.S. at 598, 119 S.Ct. 2176. The Court responded that "[w]e are satisfied that Congress had a more comprehensive view of the concept of discrimination advance by the ADA." *Id.* As such, the Court held that "[u]njustified insolation ... is properly regarded as discrimination based on disability" under the ADA. *Id.* at 597, 119 S.Ct. 2176. Moreover, this Court considered the same argument at the preliminary injunction stage of this litigation and similarly rejected it. 07/09/10 Opinion at 21. Defendants' argument is again, not well-taken.[13]

### 2. *Plaintiff's Claims Are Collaterally Estopped*

 Defendants contend that Plaintiff "lacks standing because she is a member of the class certified in *Dubois v. Levine,*

---

12. Defendants incorrectly contend that failure to allege a critical element of a claim means that Plaintiff does not have "standing." Motion to Dismiss at 3. A challenge that a complaint fails to sufficiently allege the essential elements of a claim does not implicate the Court's jurisdiction, but is more properly brought pursuant to Rule 12(b)(6). *Cf. Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir.2006) (" 'at minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory' " (citation and emphasis omitted)); *see also Frazile v. EMC Mortgage Corp.,* 382 Fed.Appx. 833, 836–37 (11th Cir.2010) (same).

13. Defendants' argument that plaintiff fails to allege discriminatory treatment because she "is not a member of a suspect class so disparate treatment is analyzed using a rational basis test," Motion to Dismiss at 3, is likewise without merit. Plaintiff does not bring an equal protection constitutional claim, but rather challenges Defendants' conduct as a violation of the ADA and the Rehab Act. The Court's review is confined to resolving the case on statutory grounds. *See Olmstead,* 527 U.S. at 588, 119 S.Ct. 2176. Moreover, as previously noted, the Court's conclusion regarding the ADA applies equally to Plaintiff's claim under the Rehab Act.

Case No. 4:03–CV–107–SPM." Motion to Dismiss at 3. Attached to the Motion to Dismiss are a copy of the Complaint for Declaratory and Injunctive Relief filed on April 11, 2003, in the United States District Court for the Northern District of Florida in the *Dubois* case (Doc. 32–1; Exhibit A); the Court approved Settlement from the *Dubois* case, filed in October 2006, and covering a class defined as "all individuals with traumatic brain or spinal cord injuries who the state has already determined or will determine to be eligible to receive services from Florida's Medicaid Waiver Program ... and have not received such services," and prescribing conduct through June 2009 (Doc. 32–2; Exhibit B at 1); and the Order of Dismissal With Prejudice of the *Dubois* case, dated January 4, 2007. (Doc. 32–3; Exhibit C).

■■■■ A party may raise an affirmative defense, such as collateral estoppel, in a Rule 12(b)(6) motion, where the existence of the defense can be judged on the face of the complaint. *Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir. 1982); *Stephens v. State Farm Fire and Cas. Co.,* No. 1:03–CV–3094–JTC, 2004 WL 5546250, at *1 (N.D. Ga. June 23, 2004), *aff'd,* 149 Fed.Appx. 908 (11th Cir. 2005). In considering such a challenge, the Court may take judicial notice of and consider documents which are public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment. This is based on the fact that such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'" *Horne v. Potter,* 392 Fed.Appx.

800, 802 (11th Cir.2010) (quoting Fed. R.Evid. 201(b)). Moreover, "a court may take notice of a another court's order ... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of that litigation." *United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir.1994).

■■■■ Here, the parties do not dispute the fact that the proffered *Dubois* documents accurately reflect the *Dubois* proceedings, nor do they appear to dispute that the Court should take judicial notice of the documents. *See* Motion to Dismiss at 3–5; Response at 2–5; *see also United States v. Jones,* 29 F.3d at 1553; Fed. R.Evid. 201(b). Thus, the Court takes judicial notice of documents filed in the *Dubois* proceedings because they are in the public record, capable of accurate and ready determination, and not reasonably questioned, without converting the Defendants' Motion to Dismiss into a motion for summary judgment. *See Horne,* 392 Fed. Appx. at 802 (holding that district court properly took judicial notice of documents in plaintiff's first discrimination case and affirming dismissal of the complaint based on res judicata); *Universal Express, Inc. v. SEC,* 177 Fed.Appx. 52, 53–54 (11th Cir.2006) (district court could take judicial notice of complaint filed in the Southern District of New York without converting motion to dismiss into a motion for summary judgment); *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1279–80 (11th Cir.1999) (court at motion to dismiss stage was authorized to take judicial notice of relevant public record documents required to be filed with the SEC).

Having considered the *Dubois* documents attached to the Motion to Dismiss, the Court finds that Defendants' Motion to Dismiss based upon the doctrine of collat-

eral estoppel is due to be denied. *See* 7/9/10 Opinion at 21–24. Indeed, this Court rejected Defendants' same collateral estoppel argument based upon the *Dubois* settlement in granting Plaintiff's Motion for Preliminary Injunction. At that time, the *Dubois* settlement and supporting documents were before the Court and examined. The Court determined that the *Dubois* Settlement document was insufficient to establish that the first three prerequisites for collateral estoppel—namely that the issue at stake in *Dubois* was identical to the issues raised here; that the issue was "actually litigated" in *Dubois*; and that the determination of the issue was a " 'critical and necessary part' " of the judgment in *Dubois*—and indeed raised significant questions about Defendants' ability to satisfy the second and third elements. 7/9/10 Opinion at 22 (citing *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir.2000)). Moreover, the Court found that the *Dubois* Settlement unequivocally established that Plaintiff did not have a full and fair opportunity to litigate the issues raised by her claims in the *Dubois* proceeding, and thus Defendants failed to satisfy the fourth essential element required for collateral estoppel to .apply. 7/9/10 Opinion at 23. Specifically, because Plaintiff did not suffer her injury until September 7, 2007, which was after the *Dubois* action was filed and after the *Dubois* Settlement was signed and approved by the Court, Plaintiff was not a party to the *Dubois* litigation, and did not have an " 'opportunity to litigate' " her claims. *Id.* at 23–24 (citation omitted). For this additional reason, Defendants' Motion to Dismiss based upon collateral estoppel is due to be denied.

**3. *Plaintiff Fails To State A Claim Because The Regulations Implementing The ADA Are Not Enforceable By A Private Right Of Action***

Defendants argue that the so-called "integration mandate" found in ADA implementing regulation 28 C.F.R. § 35.130(d), which provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities," does not provide a private right of action, and thus, Plaintiff fails to state a claim. Motion to Dismiss at 6–8. As support, Defendants cite to the recent Eleventh Circuit case *Am. Ass'n of People With Disabilities v. Harris*, 605 F.3d 1124 (11th Cir.2010), in which the court held that ADA regulation 28 C.F.R. § 35.151(d), which deals with nondiscrimination on the basis of disability in state and local services, 605 F.3d at 1129, standing alone, did not create a private right of action enabling visually impaired and disabled voters to sue state and county election officials to provide handicapped-accessible voting machines. 605 F.3d at 1132, 1135. In *Harris*, the court vacated the district court's decision which granted recovery based on a violation of the regulation alone.

This Court rejected Defendants' same argument in granting the Preliminary Injunction in this case, finding that the *Harris* decision presented no bar to Plaintiff's claims because Plaintiff is alleging a violation of the ADA, which does afford a private right of action. *See* 7/9/10 Opinion at 24–26. Indeed, Plaintiff specified in her Complaint that she is alleging a violation of the ADA, 42 U.S.C. § 12132, (and of the Rehab Act. 29 U.S.C. § 794(a)), as required by *Harris*. Complaint ¶¶ 71, 74, 77. *Compare Harris*, 605 F.3d at 1131 (questioning how the district court ordered the defendant to comply with § 35.151(b) without first determining whether the defendant violated the ADA or whether the ADA authorized the relief sought). The relevant provision of the ADA, 42 U.S.C. § 12132, requires all public entities to re-

frain from discrimination, including "unjustified 'segregation' of persons with disabilities as a 'for[m] of discrimination.'" *Olmstead,* 527 U.S. at 600, 119 S.Ct. 2176 (citing 42 U.S.C. §§ 12101(a)(2) and (5) as support); *see also* 29 U.S.C. § 794 and 45 C.F.R. § 84.12 (a Rehab Act regulation). Thus, under *Olmstead,* the failure to provide Medicaid services to a qualified individual such as Plaintiff in a community-based setting, may constitute a form of discrimination under the relevant statutory scheme. Plaintiff's citation to the ADA's and Rehab Act's implementing regulations in her Complaint merely amplified her statutory claims, inasmuch as "the purpose of those regulations is to provide standards for compliance with the" statutes. *Harris,* 605 F.3d at 1134–35.

■ Plaintiff's Complaint sufficiently states a claim under Title II of the ADA, and the Rehab Act. The Complaint alleges that Defendants administer Florida's Medicaid Program, that the TBI/SCI Waiver Program is part of the Medicaid Program, Complaint ¶¶ 4, 8, 33, 36, 37, 38, 42, 43, and that Defendants are required to administer their Medicaid Programs, including the TBI/SCI Waiver Program, in compliance with the ADA and the Rehab Act. *Id.* ¶ 49. Plaintiff adequately alleges that she is a "qualified individual" with a disability, so as to qualify for the protections afforded by the ADA and the Rehab Act, *id.* ¶¶ 10–30, and that without the declaratory and injunctive relief sought, she is at risk of being institutionalized against her will. *Id.* ¶¶ 30–32. Moreover, Plaintiff has alleged that the relief requested, that is, placement in the TBI/SCI Waiver Program, can be "reasonably accommodated" by Defendants and could be accomplished without "fundamental alteration" of Defendants' program. *Id.* ¶¶ 31–38, 42. Ac-

cordingly, for purposes of resolving the Motion to Dismiss, the Court finds that Plaintiff has adequately alleged that Defendants have violated the ADA, 42 U.S.C. § 12132, and the Rehab Act, 29 U.S.C. § 794(a). *See Olmstead,* 527 U.S. at 587, 597, 600, 602–07, 119 S.Ct. 2176.

4. *Plaintiff Fails To State A Claim Because The ADA Does Not Require A Public Entity To Provide Plaintiff With Personal Services*

■ Defendants next contend that Plaintiff's claims under the ADA and the Rehab Act fail because the ADA regulations exclude personal care services sought by Plaintiff from the purview of the ADA. Defendants cite to regulation 28 C.F.R. § 35.135, which states that the ADA "does not require a public entity to provide to individuals with disabilities . . . services of a personal nature, including assistance in eating, toileting, or dressing." 28 C.F.R. § 35.135. Motion to Dismiss at 9–13. Thus, to place Plaintiff in the TBI/SCI Waiver Program, would, according to Defendants, be declaring "an exception for public entities that provide [personal care] services." *Id.* at 10.

The Court rejected Defendants' argument in the proceedings on the Motion for Preliminary Injunction, finding that while "[t]he ADA does not require states to provide a level of care or specific services, . . . once states choose to provide certain services, they must do so in a nondiscriminatory fashion. 7/9/10 Opinion at 27 (citing *Olmstead,* 527 U.S. at 603 n. 14, 119 S.Ct. 2176 ("States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide"); *Fisher,* 335 F.3d at 1182 (state may not amend option programs so as to violate the ADA)). The Court concluded:

Here, Defendants have elected to provide the services that Plaintiff requests through the TBI/SCI Waiver program. Having done so, they must provide them in accordance with the ADA's anti-discrimination mandate. Therefore, if Plaintiff is entitled to Medicaid services and is otherwise qualified for, desires, and requires TBI/SCI Waiver services in order to avoid unnecessary institutionalization, the ADA may, indeed, require Defendants to provide Plaintiff with such services if doing so would not result in a fundamental alteration of its programs.

*Id.*

■■■ Regulation Section 35.135 states that public entities that are not already providing personal services are not required to do so. However, when public entities do provide personal services, the ADA's general prohibition against discrimination requires that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services ... of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(a), and that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The clear implication is that the ADA requires a public entity to administer its existing programs in a nondiscriminatory manner and "in the most integrated setting appropriate." *See id.*

Plaintiff alleges in her Complaint that Defendants have undertaken to provide personal care services in nursing homes and in the community, but refuse to provide them to her in the community unless she first enters a nursing home. Complaint, ¶¶ 8, 9, 33, 36, 38, 42, 43. Thus, notwithstanding 28 C.F.R. § 35.130, under the facts as alleged, Plaintiff has stated a statutory claim for declaratory and injunctive relief under the ADA and the Rehab Act.

5. ***Plaintiff Fails To State A Claim Because Her Claim For Relief Would Require Amending or Abrogating The Medicaid Act***

Defendants assert that the relief sought by Plaintiff would require a finding that the ADA invalidates one or more provisions of the Medicaid Act, and since the ADA did not amend the Medicaid Act, Plaintiff has failed to state a claim upon which relief can be granted. Motion to Dismiss at 13–20. Defendants argue that while Medicaid mandates nursing facility services, it does not require community-based personal services. *Id.* at 13–16. Defendants contend that while a state may voluntarily provide additional non-mandatory services under a "waiver" agreement with the federal government, such as the TBI/SCI Waiver Program, it may "cap" the number of persons receiving waiver services. *Id.* at 14–15. Defendants reason that requiring them to provide in-home personal care services to Plaintiff would "nullify" provisions of the Medicaid Act. *Id.* at 16.

The Court addressed this same argument before, and held that Plaintiff's claim does not require a finding that the ADA invalidates or amends the Medicaid Act by mandating the provision of community-based personal care services to Plaintiff which is an otherwise optional benefit under Medicaid, 7/9/10 Opinion at 28. Indeed, the Court observed that "[a] state that chooses to provide optional services, cannot defend against the discriminatory

administration of those services simply because the state was not initially required to provide them." *Id.* at 28. In addition, the Court held that Plaintiff's claims do not seek to invalidate the "cap" Defendants have placed upon the TBI/SCI Waiver Program, or to in any other way invalidate any provisions of the Medicaid Act. *Id.* at 29. Plaintiff here is simply seeking to require Defendants to comply with the non-discrimination provisions of the ADA and the Rehab Act in the programs Defendants offer. *Id.*[14] Indeed, "States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." *Olmstead,* 527 U.S. at 603 n. 14, 119 S.Ct. 2176. Defendants' Motion to Dismiss based on this invalidation argument is due to be denied.

**6. Plaintiff Fails To State A Claim Because Her Claim For Relief Would Result In A Fundamental Alteration To The Florida Medicaid Program In Violation Of The ADA**

■ The Supreme Court has instructed that "the proscription of discrimination *may* require placement of persons with ... disabilities in community settings rather than in institutions" when 1) "the State's treatment professionals have determined that community placement is appropriate"; 2) the "transfer from institutional care to a less restrictive setting is not opposed by the affected individual"; and 3) "the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olm-*

*stead,* 527 U.S. at 587, 119 S.Ct. 2176 (emphasis added).

The State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless. The reasonable-modifications regulation speaks of "reasonable modifications" to avoid discrimination, and allows States to resist modifications that entail a "fundamenta[l] alter[ation]" of the States' services and programs.

. . .

■ Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with ... disabilities.

*Id.* at 603–04, 119 S.Ct. 2176 (citing 28 C.F.R. § 35.130(b)(7)). "Fundamental-alteration" is an affirmative defense. *See id.* at 597, 119 S.Ct. 2176 ("evaluating a State's fundamental-alteration defense"), 603 ("cost-based defense"), 605 ("fundamental-alteration defense"). A complaint may be dismissed for failure to state a claim "when its allegations ... show that an affirmative defense bars recovery on the claim." *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1022 (11th Cir.2001). "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule

---

**14.** In this regard, the Supreme Court has provided a framework of analysis to determine whether state-run Medicaid home and community-based care for the disabled, provided through a waiver program, discriminates against a qualified individual in violation of the ADA, without invalidating any

provisions of the Medicaid Act. *See Olmstead,* 527 U.S. at 601, 119 S.Ct. 2176 ("Medicaid has provided funding for state-run home and community-based care through a waiver program" and holding that mentally disabled respondents were qualified for community-based personal care).

12(b)(6)." *LeFrere v. Quezada,* 582 F.3d 1260, 1263 (11th Cir.2009).

■ Looking at the four corners of the Complaint, as the Court must when considering a Rule 12(b)(6) Motion to Dismiss, Plaintiff has alleged that she has been on the TBI/SCI Waiver Program waiting list for two and a half years. Complaint ¶¶ 13, 40, 41, 65. When Plaintiff contacted Defendants to report her changed circumstances in March, 2010, "Defendants' employee did not know when, or if, Ms. Haddad would receive waiver services." *Id.* ¶ 32. In the Complaint, Plaintiff alleges that the TBI/SCI Waiver Program "community-based Medicaid services" is limited to 375 participants through 2012, that the number of persons with spinal cord injuries on the " 'wait list' " increased from 434 to 554 in 2008, that Defendants have not increased the number of people with spinal cord injuries who will receive community-based waiver services, and that Defendants "have recently stated there are 'no funded slots open' in the spinal cord waiver program." Complaint ¶ 43, 44, 46, 48, 64, 67. Additionally,

> Ms. Haddad has never been informed about her rank or numerical position on the waiting list, whether her rank or numerical position has even changed, when approximately she will receive Waiver services, what if anything she might do to increase her position, or any other information regarding how slowly or quickly the waiting list might be moving.

*Id.* at ¶ 66. Plaintiff alleges that Defendants have told her that to be " 'eligible' " for TBI/SCI Waiver Program, "she will have to enter a nursing home for 60 days" first, *id.* ¶ 41, although a "very limited number of people" similar to plaintiff re-ceive the community-based services without first entering a nursing home. *Id.* ¶ 38. Plaintiff alleges that the cost to Defendants of providing her community-based personal services would be less than providing those same services in the institutionalized setting, to which Defendants are requiring her to submit. *Id.* ¶ 34, 35.

Defendants argue first that Plaintiff's claims would "allow" the ADA to "trump" the Medicaid Act resulting in a "fundamental alteration" of the state's Medicaid Program. Motion to Dismiss at 20. As confirmed by the Supreme Court in *Olmstead,* and as set forth above, *see supra* at 15–18, Plaintiff's claims do not seek to alter any Medicaid program; instead Plaintiff seeks relief alleging that the Medicaid TBI/SCI Waiver Program offered by the state violates the ADA and the Rehab Act because it would result in her involuntary isolation and segregation in a nursing home, which the Supreme Court has said may be contrary to the ADA's proscription against discrimination.

Next, Defendants contend that placing Plaintiff in the TBI/SCI Waiver Program would result in their being "forced to reduce services that others in the TBI/SCI Waiver program are currently receiving." Motion to Dismiss at 21. As support, Defendants cite to the Affidavit of TBI/SCI Medicaid Waiver program administrator Kristen Russell, attached as an exhibit to their Motion to Dismiss. (Doc. 32–4 (Russell Aff.)). On this Motion to Dismiss, the Court's review is limited to the four corners of the Complaint which does not include the Russell Affidavit. *Long,* 508 F.3d at 578 n. 3; *Bickley,* 461 F.3d at 1329 n. 7. Defendants also argue that ordering the relief sought by Plaintiff would cause a fundamental alteration and disruption of Defendants' " 'comprehensive, effectively

working plan'" to provide community-based services to disable persons such as Plaintiff. Motion to Dismiss at 21–23 (citing *Olmstead*, 527 U.S. at 606, 119 S.Ct. 2176). Again, Defendants cite to the Russell Affidavit, attached as an exhibit to their Motion to Dismiss, and to affidavits submitted in opposition to Plaintiff's Motion for Preliminary Injunction.[15] The Court has declined to consider Defendants' affidavits for purposes of resolving the instant motion.

Recognizing that a State must have some "leeway" to administer services to disabled persons in community settings "with an even hand," the Supreme Court discussed the "fundamental-alteration defense." *Olmstead*, 527 U.S. at 605–06, 119 S.Ct. 2176.

> If, for example, the State were to demonstrate that it had a comprehensive, effectively working plan for placing qualified persons with mental disabilities in less restrictive settings, and a waiting list that moved at a reasonable pace not controlled by the State's endeavors to keep its institutions fully populated, the reasonable-modifications standard would be met.

*Id.* This defense, raised by Defendants in a motion to dismiss, cannot succeed given the allegations of the Complaint which the Court must accept as true.

After a thorough review of Plaintiff's Complaint, the Court readily concludes that Defendants' fundamental alteration defense is not established as a matter of law on the face of Plaintiff's Complaint. For example, as part of this defense, De-

fendants argue that they would be forced to reduce services to others and that their "comprehensive plan" would be disrupted, if they were to be forced to provide Plaintiff with the services she requests. However, Plaintiff alleges that Defendants have told her she could receive community-based services if she would enter a nursing home facility first. It is not at all apparent from the Complaint how Defendants' program would be "fundamentally altered" if Plaintiff were granted the relief requested and placed in the TBI/SCI Waiver program immediately rather than 60 days hence. Plaintiff also alleges that the community-based services cost less than institutionalized services, and that Plaintiff would receive community-based services if she first submits to involuntary institutionalization. These allegations, accepted as true, undermine Defendants' argument that providing Plaintiff with relief would force Defendants to reduce services to others. Additionally, Plaintiff alleges that she has been on the waiting list for the TBI/SCI Waiver Program for two and a half years, that she has communicated to Defendants that her circumstances are such that she faces immediate institutionalization absent placement in the TBI/SCI Waiver Program, and that Defendants are unable to certify that she will ever be placed in the community-based Waiver Program, unless she first submits to mandatory 60–day institutionalization. These allegations belie Defendants' current contention that the state has a comprehensive effectively working plan. Indeed, the allegations of the Complaint concerning the delay and uncertainty surrounding placement on, and movement off of, the TBI/

---

15. Affidavit of Elizabeth Y. Kidder, Bureau Chief for Medicaid Services, Florida Agency for Health Care Administration (Doc. 24–1), and Affidavit of Susan Michele Hudson, Bureau Chief for Medicaid Program Analysis, Florida Agency for Health Care Administration. (Doc. 26–1).

SCI Waiver Program waiting list, and the requirement that Plaintiff submit to involuntary institutionalization in order to receive services, do not begin to establish the existence of a "comprehensive effectively working plan" or a waiting list that moves at a reasonable pace. In sum, Defendants' affirmative defense that it has "comprehensive, effectively working plan," and "a waiting list that move[s] at a reasonable pace" is not apparent from the face of the Complaint. Accordingly, Defendants' Motion to Dismiss based upon its "fundamental-alteration defense" is due to be denied.[16]

Upon due consideration, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss Complaint (Doc. 32) is **DENIED.**

2. The deadlines and settings in the Court's Case Management and Scheduling Order (Doc. 55) remain in effect.

---

**16.** The Court, in considering the same evidence proffered by Defendants in support of their Motion to Dismiss, held that Plaintiff was entitled to a Preliminary Injunction, based, in part, on her likelihood of success on the merits. Opinion at 30–35. The Court determined that based on the evidence submitted, "it is unclear why Defendants would not realize some savings from the start," given the fact that the evidence established. that Plaintiff is "on the threshold of involuntary institutionalization." Opinion at 32. Additionally, the Court determined that, based upon the limited record, there was no evidence that placement of Plaintiff in the TBI/ SCI Waiver Program would undermine Defendants' ability to serve other similarly qualified disabled individuals. *Id.* at 33. Finally,

the Court held that Defendants had not submitted sufficient evidence to establish that the state had a comprehensive working plan in place to address unnecessary institutionalization, finding that Defendants' "plan" was to require Plaintiff to enter a nursing home for at least 60 days and then be transitioned out of the institution to home services, in order to provide Defendants an alternative funding source for the community-based services. *Id.* at 33–35. On this record, the Court held that Defendants' fundamental alteration defense was not sufficiently supported, and that Plaintiff established at that stage of the litigation, that she was likely to prevail on the merits of her case. *Id.* at 36.