[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 20, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15561

_____

D. C. Docket No. 05-00096-CV-HL-4


WILBUR ALLMOND,
a.k.a. Gene Allmond,

                                                                        Plaintiff-Appellant,

                                        versus


AKAL SECURITY INC.,
ERIC HOLDER, Attorney
General of the United States,

                                                                        Defendants-Appellees.



_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 20, 2009)

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Wilbur Allmond appeals the district court's grant of summary judgment to Akal Security Inc. and the Attorney General on his discrimination claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. Believing that the affirmative business-necessity defense applies here, we affirm the judgment.

## BACKGROUND

The United States Marshals Service is responsible for securing the federal courts. 28 U.S.C. § 566(a). To fulfill that mission, the Marshals Service contracts with private companies, like Akal Security, to provide security officers at federal courthouses. Those officers perform a variety of protective services, such as guarding courthouse entrances, maintaining a security presence in courtrooms, and responding to emergency situations. Akal Security employed Allmond as a security officer at the federal courthouse in Columbus, Georgia.

A.      The Marshals Service Requires Security Officers to Pass a Hearing
        Test Without the Help of a Hearing Aid

After the bombing of the federal building in Oklahoma City, Oklahoma, and in response to judicial concern with the physical capability of security officers to respond to security threats and other emergency situations, the government reviewed the security officer position.  Dr. Richard Miller, then Director of Law Enforcement Medical Programs for the Office of Federal Occupational Health, conducted the study.  In doing so, Dr. Miller visited five federal courthouses where he observed officers on the job, conducted focus groups with officers, and interviewed judges and Marshals Service personnel about the position.

Dr. Miller reported his findings in 2000.  He identified several hearing-related tasks that are essential to the security officer position:  comprehending speech during face-to-face conversations, over the telephone, over the radio, and outside the range of sight; hearing sounds that require investigation; and localizing sound.  He concluded that officers must "be able to clearly understand directions in times of crisis[,] . . . must be able to hear communication at a level of sound that does not inform persons causing an incident of the [officers'] response plans[,] . . . [and] must be able to discern the direction of a disturbance or detect an approaching threat (sound localization)."  According to Dr. Miller, these skills are

3

integral to "[t]he safety of the federal judiciary, court personnel, and the public . . . ."

To guarantee that all security officers can adequately perform their job, Dr. Miller recommended changes to the medical standards for the position. Among the changes, he suggested that all officers (officers may wear hearing aids on the job) pass a hearing test without the help of a hearing aid -- a hearing-aid ban during testing -- to qualify for the position.[1] According to Dr. Miller, this hearing-aid ban would ensure that all officers can perform effectively in the event their hearing aids experience interference, become dislodged, or otherwise fail on the job. The Marshals Service implemented many of Dr. Miller's recommendations, including the hearing-aid ban.

### B.     Allmond Fails His Hearing Test

As a new security-officer applicant, Allmond was required to take a pre-employment medical examination, which included a hearing test subject to the hearing-aid ban. He failed the test.[2] At the suggestion of the Marshals Service, he

---

[1] Security officers are subject to pre-employment and annual medical examinations. An officer who fails his examination is often allowed to supplement his medical record before a final determination is made. If the officer is still disqualified after doing so, he must be replaced.

[2] Allmond did not use a hearing aid before or during his employment with Akal Security.

underwent additional testing and submitted additional medical information. Nevertheless, even after doing so, he remained disqualified due to his "decreased ability to distinguish speech in the absence of background noise . . . ." The Marshals Service notified Akal Security of the situation; and Akal Security, as it was required to do under its contract with the Marshals Service, terminated Allmond's employment.

C.      Allmond Sues Akal Security and the Attorney General

Allmond sued Akal Security and the Attorney General. Allmond claimed that the hearing-aid ban discriminates against disabled persons in violation of the Rehabilitation Act and the ADA. He sought damages, reinstatement, and an order prohibiting the Marshals Service from continuing the ban.

The district court granted summary judgment to Akal Security and to the Attorney General. Although the district court found a genuine issue of material fact on whether Allmond is disabled under federal law, the district court concluded that the hearing-aid ban is a lawful business necessity. Allmond appeals.

## STANDARD OF REVIEW

We review de novo an order granting summary judgment. Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). In doing so, we view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006). We will affirm summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

In this appeal, we focus our attention solely on the affirmative business-necessity defense and its application to the hearing-aid ban. We express no view on whether Allmond is disabled under federal law and just assume that he is disabled for the sake of discussion.

The Rehabilitation Act and the ADA prohibit an employer from applying a qualification standard that screens out or tends to screen out disabled persons.[3] See

---

[3] Because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably. Cash v. Smith, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

42 U.S.C. § 12112(b)(6). But these laws also afford an employer an affirmative business-necessity defense to claims challenging the application of an otherwise problematic standard.[4] See 42 U.S.C. § 12113(a). The parties rely on those competing provisions here: Allmond says that the hearing-aid ban unlawfully precludes certain disabled persons from serving as security officers;[5] Akal Security and the Attorney General, on the other hand, contend that the ban is a lawful business necessity.

To benefit from the affirmative defense, an employer must prove that the pertinent qualification standard is job-related and consistent with business necessity. Id. Although this burden is generally quite high, it is significantly lowered when, like here, "the job clearly requires a high degree of skill and the economic and human risks involved in hiring an unqualified applicant are great . . . ."[6] Hamer v. City of Atlanta, 872 F.2d 1521, 1535 (11th Cir. 1989) (internal

---

[4] Section 12113(a) uses these words: "It may be a defense to a charge of discrimination . . . that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter."

[5] At summary judgment, Allmond challenged only the hearing-aid ban; he said nothing about the other components of the unaided hearing test and, therefore, may not do so now. See Onishea v. Hopper, 171 F.3d 1289, 1305 (11th Cir. 1999).

[6] In defining the scope of the affirmative business-necessity defense under the Rehabilitation Act and the ADA, we look to cases analyzing the defense under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

quotation marks omitted). Once an employer demonstrates that the pertinent qualification standard is job-related and consistent with business necessity, the burden shifts to the plaintiff to offer a reasonable accommodation that would allow him to satisfy that standard. Moses v. Am. Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996) ("The employee retains at all times the burden of persuading the jury . . . that reasonable accommodations were available."); see also Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000).

We, therefore, begin by reviewing the hearing-aid ban for job-relatedness and business necessity. Some courts treat these terms as synonymous, but they are actually distinct pillars of the affirmative defense. As this Court has explained, "[j]ob[-]relatedness is used in analyzing the questions or subject matter contained in a test or criteria used by an employer in making hiring or promotional decisions." Hamer, 872 F.2d at 1533. Business necessity, in contrast, "is larger in scope and analyzes whether there is a business reason that makes necessary the use by an employer of a test or criteria in hiring or promotional decision making." Id. The hearing-aid ban meets both criteria.

The hearing-aid ban is job-related. In response to judicial concern, the government sponsored a detailed analysis of the security officer position to identify the essential functions of the job and the medical qualifications necessary to

8

perform it. As a result of that study, the government concluded that officers must possess a certain level of unaided hearing to perform those functions adequately at all times. To guarantee that all security officers have that required hearing, the Marshals Service -- at the recommendation of the doctor conducting the study -- adopted the hearing-aid ban. Based on these facts alone, we believe that the ban is sufficiently tailored to the security officer position to satisfy this element of the defense.

The hearing-aid ban is also consistent with business necessity. As we noted at the outset, the Marshals Service is entrusted to protect the federal courts and relies heavily on security officers to carry out this duty. Because hearing aids may malfunction, break, or become dislodged,[7] the Marshals Service adopted the ban to ensure that all officers can perform their jobs safely and effectively in the event they must rely on their unaided hearing.[8] When considered in the light of the tremendous harm that could result if a security officer could not perform the essential hearing functions of his job at a given moment, we accept this

---

[7] Allmond heavily criticizes this justification as based on events that may never occur. But neither the ADA nor the Rehabilitation Act requires employers to forgo a qualification standard "until a perceived threat becomes real or questionable behavior results in injuries." Watson v. City of Miami Beach, 177 F.3d 932, 935 (11th Cir. 1999).

[8] Allmond's own witness conceded that a security officer who cannot hear certain sounds at a critical moment due to hearing-aid failure would present an unacceptable risk to the safety of others.

9

justification as legitimate and wholly consistent with business necessity.

The burden, thus, shifts to Allmond to offer a reasonable accommodation that would allow him to pass the hearing test without the help of a hearing aid. But his only suggestion is to remove the hearing-aid ban entirely. That proposal is not reasonable: it destroys the very standard we have just upheld as a legitimate business necessity. We, therefore, reject Allmond's proposal and conclude that the affirmative business-necessity defense bars Allmond's claims in full. Summary judgment was proper.

## CONCLUSION

We affirm the judgment of the district court.

AFFIRMED.