ANNE C. CONWAY, United States District Judge *1265 This cause comes before the Court on Defendant's, Walt Disney Parks and Resorts U.S., Inc. ("Defendant"), Motion for Summary Judgment filed on June 1, 2016. (Doc. No. 47). Plaintiff, C.J.J. by and through C.R.J. as Next Friend, Parent, and Natural Guardian ("Plaintiff"), filed a Response in Opposition to Defendant's Motion on July 1, 2016. (Doc. No. 65). Defendant filed its Reply on July 18, 2016. (Doc. No. 72). For the following reasons, this Court will grant Defendant's Motion.
I. BACKGROUND
Plaintiff is a resident of Pinellas County, Florida living with autism, hydrocephalus, and cranial cysts. (Doc. No. 1 ¶¶ 70 and 74) (Complaint). He is generally in the care of his mother ("C.R.J."). (Id. at ¶ 73). She brought this action on his behalf. (Id. ). Plaintiff is incapable of waiting idly for long periods of time. (Doc. No. 65 p. 7). As a result, Plaintiff's family avoids places such as movie theaters, restaurants, and grocery stores. (Id. ). He also cannot understand the concept of visiting an attraction and receiving a return time to experience it at a future time. (Doc. No. 1 ¶ 76). Additionally, Plaintiff has a propensity to experience attractions in a specific order and he must experience certain attractions repeatedly for hours at a time. (Id. at ¶ 79). Exposure to idle waits or not being able to follow his routine will cause Plaintiff to have a behavioral meltdown. (Id. at ¶ 71). His meltdowns are mild and nonphysical.
Defendant is one of the world's most popular amusement parks. (Doc. No. 47 p. 23). It is divided into four parks that are organized into six lands, comprising over one hundred rides and attractions. (Id. at p. 3 n.1). Until October 9, 2013, Defendant would issue a Guest Assistance Card ("GAC") to certain disabled guests at its parks. (Id. at p. 4). A GAC allowed these guests and their party nearly unlimited access to rides through alternative "backdoor entrances" or "Fastpass"[1] lines. (Id. at p.5).
Defendant, however, abandoned the GAC system because of alleged abuse by both guests that needed GACs and those that did not. (Id. ). The most common way guests purportedly abused the former GAC system was by requesting the accommodation with no need for it altogether. (Id. ). Individuals were also creating counterfeit GACs, posting Craigslist advertisements offering unauthorized tours guided by GAC holders, and selling unexpired GACs online. (Id. ).
The Disney Disability Access Service ("DAS") was adopted to replace the GAC system. (Id. at 7). Starting October 9, 2013, guests needing accommodations for a cognitive disability at Defendant's parks had to obtain a DAS card from its Guest Relations personnel upon arrival. (Id. ). DAS affords guests with disabilities such as autism the ability to "virtually wait" for attractions without standing in lines. (Id. ). A guest using DAS arrives at an attraction, presents the card, and receives a return time. (Id. ) This can be done for the duration of their visit. (Id. ). The virtual wait using DAS is the posted time for the attraction minus ten minutes. (Id. ). DAS cardholders thus have the opportunity to "avail themselves of the many other attractions *1266 throughout the park-other rides, shows, attractions, concerts, characters, restaurants, and stores" until their return time. (Id. ). In addition to DAS, some guests receive a number of "readmission passes" permitting them to enter the Fastpass line for any attraction without having to stand in line or wait virtually. (Id. at p. 8).
Plaintiff recounts two visits to Defendant's parks in March and May 2014. On the March visit, Plaintiff was told that he could not receive any accommodation other than DAS. (Doc. No. 1¶ 83). However, upon returning to their hotel, they were offered readmission passes. (Doc. No. 65 p. 8). On the May visit, Plaintiff had to wait idly for return times at various rides in which he wanted to ride repeatedly but was not allowed to do so. (Doc. No. 1 ¶¶ 88 and 89).
Overall, Plaintiff and his family were disappointed with their experience and are discouraged and deterred from visiting Defendant's parks because of DAS. (Id. at ¶¶ 91 and 96). As a result, Plaintiff requests injunctive relief requiring Defendant to modify DAS to provide further accommodations. (Id. ).
II. LEGAL STANDARD
Granting a summary judgment motion is proper if the moving party "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Hairston v. Gainesville Sun Pub. Co. , 9 F.3d 913, 918 (11th Cir. 1993).
A grant or denial of summary judgment hinges on whether there is a triable issue. Such issue exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson , 477 U.S. at 249, 106 S.Ct. 2505. However, the Court must grant a motion if "the evidence ... is so one-sided that one party must prevail as a matter of law." Id. at 251-52, 106 S.Ct. 2505. In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505 (quoting Adickes v. S.H. Kress & Co. , 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ); Allmond v. Akal Sec., Inc. , 558 F.3d 1312, 1316 (11th Cir. 2009).
III. DISCUSSION
As an initial matter, Plaintiff claims that the Complaint alleges a failure to accommodate, disparate treatment (intentional discrimination), and a disparate impact. Defendant, however, argues that it asserts only a failure to accommodate.
The parties' discord on what the issues are stems from Count I in the Complaint, the only count pertaining to the Americans with Disabilities Act ("ADA"). Plaintiff broadly alleges a cause of action under 42 U.S.C. § 12131 et seq.[2] A close reading of the Complaint nonetheless shows that only *1267 one issue is in dispute: the ADA's specific prohibition for the failure to accommodate, § 12182(b)(2)(A)(ii), as referenced at ¶ 11. Count I provides facts describing Plaintiff's experience with Defendant's accommodations. (Doc. No. 1 ¶¶ 69-99). Though the Complaint mentions the ADA's general prohibition against discrimination, it lacks discernible allegations regarding denial of participation, participation in an unequal benefit, or a separate benefit. 42 U.S.C. § 12182(b)(l)(A)(i)-(iii).[3] Furthermore, Count I makes no identifiable claims of disparate treatment or disparate impact. Instead, Count I only alleges that Defendant's accommodations are insufficient. Based on these three theories that Plaintiff purports are applicable, Plaintiff has only made allegations for a failure to accommodate.
Thus, Plaintiff's arguments of disparate treatment and disparate impact are now raised for the first time. Such tactic is impermissible. Raytheon Co. v. Hernandez , 540 U.S. 44, 53, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) ; Gilmour v. Gates, McDonald & Co. , 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Plaintiff's proper course of action was to move for leave to amend the Complaint. See id. The deadline to do so has nonetheless passed.
Even if Plaintiff's Complaint is construed to allege disparate treatment and disparate impact, Plaintiff has not carried the initial burden of satisfying a prima facie case for either. Proving disparate treatment requires Plaintiff to show that a motivating factor behind Defendant implementing DAS was to impose an adverse effect on individuals with Plaintiff's disability. See Vill. of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 265-66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). However, Plaintiff states that "Disney's entire goal was to eliminate its prior system [GAC], for business reasons." (Doc. No. 65 p. 12).
Furthermore, "[a] disparate impact case is one in which a facially neutral practice impacts more harshly on one group of people than on others." Mayberry v. Von Valtier , 843 F.Supp. 1160, 1164-65 (E.D. Mich. 1994). Defendant's "mantra" for an "equal wait time for all" is just that-a mantra. To the extent it is viewed otherwise, Plaintiff acknowledges, as the Court elaborates infra , that the ADA is intended to ensure that disabled patrons of public accommodations are afforded a like experience of those that are not disabled to the extent feasible. (Doc. No. 65 p. 13). Disabled or not, virtually no one visits Defendant's parks and accesses its attractions without having to wait. Therefore, the real issue is DAS, which is not facially neutral. It applies specifically to those with disabilities, not all of Defendant's guests. This precludes Plaintiff from establishing a disparate impact.
A. Public Accommodations Must Provide Disabled Individuals a Like or Similar Benefit as Nondisabled Individuals
As discussed, the only legal issue at hand is Defendant's alleged failure to accommodate Plaintiff by implementing DAS and discontinuing GACs. Congress enacted the ADA specifically to protect individuals with mental and physical impairments *1268 from societal discrimination and exclusion. See generally 42 U.S.C. § 12101(a)(2). This was based on its finding, amongst other things, that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." Id. ; PGA Tour, Inc. v. Martin , 532 U.S. 661, 674-75, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Such discrimination includes "outright intentional exclusion as well as the failure to make modifications to existing facilities and practices." Id. at 675, 121 S.Ct. 1879 (citing 42 U.S.C. § 12101(a)(5) ) (internal quotation marks omitted).
The ADA accordingly prohibits discrimination by private entities providing certain amenities to the public. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Myriad entities, including amusement parks, are deemed public accommodations by the ADA. Id. at § 12181(7)(I). The statute also lists specific prohibitions. There is only one prohibition at issue here:
[F]ailure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.
42 U.S.C. § 12182(b)(2)(A)(ii).
Pursuant to this prohibition, the parties disagree over the extent of the accommodations Defendant is required to provide.[4] The Martin Court noted that § 12182(b)(2)(A)(ii)"contemplates three inquiries: whether the requested modification is 'reasonable,' whether it is 'necessary' for the disabled individual, and whether it would 'fundamentally alter the nature' " of the accommodation. 532 U.S. at 683 n.38, 121 S.Ct. 1879. Therefore, a plaintiff must show that he requested a modification and that such modification is reasonable "in the run of cases." Johnson v. Gambrinus Co./Spoetzl Brewery , 116 F.3d 1052, 1059 (5th Cir. 1997). A defendant can then offer rebuttal evidence to the reasonableness of the request but the burden of proof on this issue remains with the plaintiff. Id. If the plaintiff satisfies the burden of showing that the requested accommodation is reasonable and necessary, the modification must be made unless the defendant proves it would fundamentally alter the nature of the public accommodation. See id. at 1058-60 ; Larsen v. Carnival Corp. , 242 F.Supp.2d 1333, 1342-43 (S.D. Fla. 2003). Assessing whether a request works a fundamental alteration goes hand-in-hand with determining its reasonableness. See id. Courts have considered "the effectiveness or feasibility of the proposed modification and whether it imposes undue costs or administrative burdens on *1269 the defendant" in making this determination. Id. (citing DeBord v. Bd. of Educ. of the Ferguson-Florissant Sch. Dist. , 126 F.3d 1102, 1106 (8th Cir. 1997) ; Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995) ).
Courts have used the "full and equal enjoyment" language in § 12182(a) to guide the "necessary" inquiry in § 12182(b)(2)(A)(ii). Martin states that an accommodation is necessary if it is beyond the individual's capacity to access a public accommodation without it. 532 U.S. at 682, 121 S.Ct. 1879. Though this is telling regarding an accommodation's necessity, it was dicta.[5] Accordingly, courts have interpreted the "full and equal enjoyment" clause, in the context of the necessary requirement, to mean that Congress intended for all individuals to have an opportunity to experience an equal benefit from public accommodations to the extent it is feasible. Argenyi v. Creighton Univ. , 703 F.3d 441, 450-51 (8th Cir. 2013) ("Congress require[s] public accommodations ... to furnish reasonable ... services so that all individuals have an equal opportunity to gain 'a like' or 'equal' benefit."); Baughman v. Walt Disney World Co. , 685 F.3d 1131, 1135 (9th Cir. 2012) ("Public accommodations must start by considering how their facilities are used by nondisabled guests and then take reasonable steps to provide disabled guests with a like experience."); Liese v. Indian River Cty. Hosp. Dist. , 701 F.3d 334, 343 (11th Cir. 2012) ("the proper inquiry [in determining if an accommodation was provided where necessary] is whether the auxiliary aid that a hospital provided to its hearing-impaired patient gave that patient an equal opportunity to benefit from the hospital's treatment."). In sum, a key inquiry in determining that a requested accommodation is necessary is whether a disabled individual requires it to receive a benefit like that of a nondisabled person.
B. The Parties' Arguments
Defendant primarily argues that Plaintiff has not met his burden because an accommodation beyond DAS is not necessary as DAS affords him access to the rides at its parks. (Doc. No. 47 p. 14). Defendant also contends that if the Court finds that reverting to the GAC system is reasonable and necessary, it would nonetheless fundamentally alter its operations based on the risk of abuse and an overall adverse impact on the wait times experienced by all other guests. (Id. at p. 21). It also attacks Plaintiff's standing to sue, asserting that he did not suffer a cognizable injury because he was not denied access to its parks. (Id. at p. 24).
Plaintiff counters Defendant's Motion with five main arguments. First, Defendant's conduct amounts to disparate treatment or alternatively creates a disparate impact. (Doc. No. 65 p. 10). Second, the reasonableness inquiry is fact-intensive and not fit for resolution on summary judgment. (Id. at p. 14). Third, Plaintiff's requested accommodation is necessary because it is not a preference-it is a biologically driven mechanism. (Id. at p. 15). Fourth, Defendant has not shown that the requested accommodation will fundamentally alter its operations because it has provided a similar accommodation for the last twenty years. (Id. ). Lastly, Plaintiff contends that he has standing because being deterred from visiting Defendant's parks is alone sufficient to sue. (Id. at p. 20). Plaintiff's disparate treatment and disparate impact arguments have already been addressed and are impermissible.
*1270 Therefore, based on the remaining arguments identified by each party, there are four issues to be considered by this Court:
1. Whether Plaintiff's requested modification is necessary to afford him access to Defendant's parks;
2. Whether Plaintiff's requested modification is reasonable;
3. Whether Plaintiff's requested modification would fundamentally alter the services provided by Defendant; and
4. Whether Plaintiff has standing to pursue his claim.
The subsequent analysis covers issues one and four only. Even if Plaintiff has standing to sue, the Court determines that the requested accommodation is not necessary. Therefore, discussion on the reasonableness of Plaintiff's request and whether it is a fundamental alteration to Defendant's operations is not needed.
C. Plaintiff's Requested Accommodation Is Not Necessary
Revising DAS is not necessary for Plaintiff to have equal access to Defendant's parks. This is because (1) Defendant provided Plaintiff an opportunity to gain a like benefit from its parks that is enjoyed by nondisabled individuals; (2) Plaintiff can wait long enough to access Defendant's attractions without following a routine; and (3) DAS is an existing means to equal access. The Court assesses the "necessary" inquiry first because a showing that Plaintiff did not need the accommodation obviates further discussion regardless if it is reasonable. Martin , 532 U.S. at 682, 121 S.Ct. 1879.
1. Defendant afforded Plaintiff an experience like that of nondisabled guests
Plaintiff was given an opportunity to experience Defendant's attractions in a similar manner as guests that do not need accommodations. In Baughman , Defendant in this case was sued by a guest with limb girdle muscular dystrophy which made it difficult for her to walk or stand. 685 F.3d at 1131. As part of its "necessary" inquiry into the plaintiff's requested accommodation, the Ninth Circuit highlighted the importance of considering the way nondisabled persons experienced Defendant's park and then assessing if the public accommodation took reasonable steps to afford a similar experience. Id. at 1135. In the present case, nondisabled guests visit Defendant's parks for rides and attractions that most of them have to wait more than an hour to experience. (Doc. No. 47 p. 23). Comparing this to Plaintiff's experience, DAS and readmission passes allow Plaintiff to access those same rides in a fraction of the time. (Id. at p. 18). The plaintiff in Baughman had difficulty standing and walking; Plaintiff here alleges that he cannot wait in line to access attractions. Having trouble standing or walking could create a different experience from nondisabled guests when viewing certain attractions or transitioning on and off of rides. However, nondisabled guests will inevitably have to wait to experience the attractions at Defendant's parks regardless of the order they choose to visit them. Not only will nondisabled guests have to wait, most of them will have to stand in line. They also will not be able to exit an attraction and ride it again without having to wait. Plaintiff can wait for attractions from anywhere in Defendant's parks from the time he arrives until whenever he decides to leave. While doing so, Plaintiff can visit other attractions with shorter waits until his return times for attractions with longer waits. Thus, DAS and readmission passes afford Plaintiff a similar, or better, experience as those not needing accommodation.
*1271 2. Plaintiff can wait long enough to access Defendant's attractions without following a routine
The crux of Plaintiff's action is that he cannot wait idly in lines and needs to experience certain attractions repeatedly in a specific order. However, DAS accommodates these needs to the extent for him to have equal access. Plaintiff does not have to stand in line while waiting to access an attraction. Instead, he can experience other attractions in the meantime. Plaintiff has also shown that he does not need to repeat rides for hours by not repeating any during his March 2014 trip. (Doc. No. 47 p. 11). Furthermore, Plaintiff visited Defendant's Magic Kingdom on two consecutive days but rode different rides on each visit. (Id. at p. 10). In any event, the ADA does not require Defendant to accommodate Plaintiff's routine because "preference-standing alone-is not essential to accessing Disney's Park." Ault v. Walt Disney World Co. No. 6:07-cv-1785-Orl-31KRS, 2009 WL 3242028, at *7 (M.D. Fla. Oct. 6, 2009), vacated and remanded on other grounds , 405 Fed.Appx. 401 (11th Cir. 2010). Plaintiff has also shown that he can wait in line for up to twenty minutes. (Doc. No. 47 p. 12).
Furthermore, Plaintiff has demonstrated his ability to defer gratification for hours through traveling by car at least four times from Stone Mountain, Georgia to Orlando, Florida. (Id. at p. 11). The gratification in traveling is, for the most part, reaching the desired destination. These trips required multiple hours of travel time. (Id. ). This is much more than Plaintiff's demonstrated ability to wait for twenty minutes-gratification in those instances was anything but instant. Plaintiff argues that traveling by car is not comparable to visiting an amusement park because when in a car, Plaintiff is "belted in" and he has access to electronics and media. (Doc. No. 65 p. 8). Plaintiff also notes that he becomes anxious when the car stops moving. (Id. ). However, this argument only demonstrates that DAS accommodates him because it shows that Plaintiff can defer gratification as long as he has something to do in the interim. At Defendant's parks, Plaintiff can engage in other activities that he likes while waiting. Therefore, Plaintiff has access to the attractions because he can wait for the amount of time required to experience them and does not need to follow a routine. Accordingly, using DAS is not beyond Plaintiff's capacity. Martin , 532 U.S. at 682, 121 S.Ct. 1879.
3. DAS and readmission passes are existing means that afford equal access
Finally, Plaintiff's requested modification is not necessary because of the existing accommodations to access the attractions at the parks. Defendant cites a host of cases where federal courts have deemed an individual's request for accommodation unnecessary because accommodations were already in place that provided access.[6] Plaintiff's case is no different. As *1272 noted, DAS and readmission passes afford Plaintiff access to the attractions at Defendant's parks. For example, on his May 2014 visit, he experienced ten attractions but rode them for a total of sixteen times by repeating some of them. (Doc. No. 47 p. 11). Based on these facts, a reasonable juror could not find that Plaintiff's requested accommodation is necessary. Consequently, even if Plaintiff had standing, which he does not as discussed infra III. D., Plaintiff failed to satisfy an essential element of his case. Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548. Discussion of the facts as they pertain to reasonableness and the fundamental alteration defense is unnecessary. Id.
D. Plaintiff's Standing
There are two issues regarding standing: (1) Plaintiff's alleged injury from his past visits and (2) the risk of future injury pursuant to his claim for injunctive relief. Regarding the risk of future injury, Plaintiff is not being denied access to Defendant's parks. This is because DAS and readmission passes create a like experience for Plaintiff that is enjoyed by nondisabled guests. Injunctive relief is not proper and further analysis of the risk of future injury is not needed based on this fact.
Plaintiff's previous visits must be assessed under the three, bedrock elements of standing. These are "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.' " Shotz v. Cates , 256 F.3d 1077, 1081 (11th Cir. 2001) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ).
In general, a motion for summary judgment is not the appropriate means for deciding jurisdictional issues. Sheely v. MRI Radiology Network, P.A. , 505 F.3d 1173, 1182 (11th Cir. 2007) (treating the district court's grant for summary judgment regarding subject matter jurisdiction as a Federal Rules of Civil Procedure Rule 12(b)(1) motion to dismiss). However, a court can review a standing challenge on summary judgment if it is based on evidentiary support in the record. Clapper v. Amnesty Int'l. USA , 568 U.S. 398, 133 S.Ct. 1138, 1148-49, 185 L.Ed.2d 264 (2013) ("[T]he party invoking federal jurisdiction bears the burden of establishing standing-and, at the summary judgment stage, such a party can no longer rest on ... mere allegations, but must set forth by affidavit or other evidence specific facts.") (internal quotations omitted). As discussed throughout this Order, Defendant supports its standing argument through record evidence.
Plaintiff has not established injury because DAS affords him access. As shown by his experiences at Defendant's parks, DAS provides what he needs-the ability to wait for attractions virtually. Moreover, he has shown that DAS allows him to experience a significant number of attractions. Therefore, Defendant's Motion will be granted. However, even if Plaintiff had standing, Plaintiff's requested accommodation is not necessary.
IV. CONCLUSION
Therefore, based on the foregoing, it is ORDERED as follows:
1. Defendant's Motion for Summary Judgment filed on June 1, 2016 (Doc. No. 47) is GRANTED .
*1273 2. The Clerk is directed to enter judgment providing that Plaintiff shall recover nothing on his claims and that Defendant shall recover costs from Plaintiff.
3. Additionally, any pending motions filed by the parties are DENIED as moot.
4. The Clerk is directed to CLOSE this file.
DONE and ORDERED in Chambers, in Orlando, Florida on September 23, 2016.

Fastpass lines typically have shorter waits because guests in these lines receive designated return times to a ride, which essentially saves their place in line without having to wait there physically. (Doc. No. 47 p. 4).

As Plaintiff's counsel has previously been cautioned by this Court, "[a]uthorities almost universally condemn the use of 'et seq. ' in statutory citation." Santarlas v. Atchley , No. 8:15-cv-374-T-23TBM, 2015 WL 2452301, at *2 n.3 (M.D. Fla. May 21, 2015). ("[T]he use of et seq. is poor form.... Cite the complete reference instead: find the ending point, and name it."). Id. (quoting Bryan A. Garner, The Redbook: A Manual on Legal Style , Rule 6.3(d), at 122 (3d ed.)).

This is further highlighted by Plaintiff not attempting to argue this in response to Defendant's Motion. Moreover, it is telling that the parties in a related case-involving the same counsel for both parties and a nearly identical complaint-agreed that that the only issue was the failure to accommodate pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii). A.L. v. Walt Disney Parks and Resorts, U.S., Inc. , No. 6:14-cv-1544, slip op. at 5-6, 2016 WL 6304513 (M.D. Fla. Apr. 28, 2016).

The parties do not dispute whether Plaintiff is disabled. Under the ADA, a disability is defined three ways: "(1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). The statute's regulations note that "it should easily be concluded that ...autism substantially limits brain function." 29 C.F.R. § 1630.2(j)(3)(iii). Plaintiff's disabled status is therefore not an issue.

The petitioner conceded that the accommodation was reasonable and necessary, and thus the only remaining inquiry was whether it was a fundamental alteration. Martin , 532 U.S. 683 n.38, 121 S.Ct. 1879.

See Logan v. Am. Contract Bridge League , 173 Fed.Appx. 113 (3d Cir. 2006) (holding that a vision-impaired bridge player was not entitled to use a special deck of cards because alternate accommodations were available); Murphy v. Bridger Bowl , 150 Fed.Appx. 661 (9th Cir. 2005) (holding that allowing a companion to accompany an individual with a cognitive disability on a ski bike was not necessary to improve her skills because there were alternative methods available); Coleman v. Phoenix Art Museum , No. CV 08-1833-PHX-JAT, 2009 WL 1097540 (D. Ariz. Apr. 22, 2009) (holding that the plaintiff failed to meet his burden of showing that his own hip chair device was necessary to accommodate his disability when the museum offered to provide two different kinds of wheelchairs), aff'd 372 Fed.Appx. 793 (9th Cir. 2010) ; Dryer v. Flower Hosp. , 383 F.Supp.2d 934 (N.D. Ohio 2005) (holding that the plaintiff's requested modification of the hospital's policy prohibiting visitors from using its oxygen ports was not necessary because plaintiff was allowed to bring her own oxygen tank into the hospital); Larsen , 242 F.Supp.2d at 1344 (holding that plaintiff's Title III claim was insufficient because he could not establish that it was necessary for plaintiffs to carry on, rather than check in a breathing machine used while sleeping to participate fully in a cruise).